# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

REGINA HARVEY,

    Plaintiff,

v.

BRIGHAM & WOMEN'S HOSPITAL, INC.,

    Defendant.

C.A. NO.

## COMPLAINT

Pursuant to Fed. R. Civ. P. 8, Plaintiff Regina Harvey brings this Complaint against Defendant the Brigham & Women's Hospital, Inc., stating as follows:

### I.    Parties

1. Plaintiff Regina Harvey ("Ms. Harvey") is an individual with a place of residence at 22 Montrose Street, Somerville, Massachusetts.

2. Defendant the Brigham & Women's Hospital, Inc. ("BWH") is a hospital with a principal place of business at 75 Francis Street, Boston, Massachusetts.

### II.    Jurisdiction and Venue

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States, including Title VII of the Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964).

4. This Court has personal jurisdiction over the claims asserted because, *inter alia*, the Defendant is a corporation with a primary place of business in the Commonwealth of

Massachusetts and was engaged in the wrongful conduct set forth herein in this judicial district.

5.  Venue is appropriate in this United States District Court because the acts and omissions at issue occurred primarily and substantially within the judicial district of the United States District Court for the Eastern District of Massachusetts.

**III.     Brief Summary of Pertinent Facts**

6.  Ms. Harvey is a black woman over the age of 60.  As such, she is a member of two protected classes at issue in this matter: race and age.

7.  Ms. Harvey has been a registered nurse since 1997.

8.  In 2003, Ms. Harvey was hired by Massachusetts General Hospital.  In 2006, Ms. Harvey was transferred to BWH.

9.  Ms. Harvey had a productive and exemplary career at BWH.  This included being promoted to the following positions: Nurse Manager, Nurse Director, Regional Nurse Director.

10. In May 2018, Ms. Harvey received a doctorate degree in Nursing and Leadership.

11. Ms. Harvey received positive performance evaluations at BWH from 2003-2019.

12. Ms. Harvey has received the following Awards/Honors:

| | |
|---|---|
| Partners in Excellence Team Award – Outstanding Performance and Leadership | 2019 |
| Partners Quality and Safety Award – Team Award for Addressing Social Determinants | 2018 |
| Partners in Excellence Team Award – Student Success Jobs Program Mentors | 2015 |
| Partners in Excellence Team Award – Outstanding Performance & Commitment | 2014 |
| Partners in Excellence Team Award – Outstanding Performance & Commitment | 2013 |
| Partners in Excellence Team Award – Partners Community Health Ambassadors | 2012 |
| Partners in Excellence Team Award – Student Success Jobs Program Mentors | 2011 |
| Partners in Excellence Team Award – Outstanding Performance & Commitment | 2009 |
| Partners in Excellence Award – Outstanding Performance & Commitment | 2008 |
| Blue Cross Blue Shield Foundation, Mass. Institute of Community Health Leadership | 2007 |

13. Ms. Harvey has also been an active participant for social justice and good in her community.

   She has been on the following community boards/affiliations:

| | |
|---|---|
| The Home for Little Wanderers, Volunteer | 2015-2019 |
| Business Association Professional Association of Jamaica Plain, Member | 2011-2020 |
| Boston Healthcare Preparedness Coalition Charter, Member | 2011-2020 |
| Boston University Health Science, Preceptor and Mentor | 2010-2019 |
| ABCD Services/Boston Clinical Advisory Council Member | 2009-2019 |
| Community Action Network – Boston Public Health Commission Member | 2009-2019 |
| Health Care Connection, Preceptor and Mentor | 2008-2019 |
| Brigham & Women's Hospital – Student Success Jobs Program, Preceptor And Mentor | 2008-2019 |

14. In 2018, Ms. Harvey's work experience (and life) changed when there was a change in senior

   leadership at BWH.  Among other things, this resulted in Danika Medina ("Medina"), a white

   woman in her forties, transitioning into the position of Executive Director Ambulatory

   Services.

15. Ms. Harvey directly reported to the Executive Director of Community Health, but had a

   reporting structure to Medina for Nursing Leadership.

16. Medina subjected Ms. Harvey to racial animosity and racial discrimination, both direct and

   indirect.

17. Medina continuously treated Ms. Harvey differently from white employees based on her race.

   She engaged in slights and insults that were often subtle but were pervasive and prevented Ms.

Harvey from being accepted as a valued member of the team and purposefully prevented her from reaching her full potential at BWH.

18. One such example was when Medina requested Ms. Harvey to complete an SBAR report.  The SBAR document was submitted to Medina by email and in person. Medina never acknowledged the email communication during a June 18, 2020, in-person meeting. Medina did not read the document, but she contemptuously flung the unread document across her desk and proceeded to inform Ms. Harvey about the need for a performance improvement Plan ("PIP").  This conduct, and the PIP, was unexpected and unjustified.  Indeed, Ms. Harvey was previously told by her executive director that she would not receive a corrective action for the incident on June 3, 2020.

19. During the June 18 meeting, Medina nonetheless presented a PIP to Ms. Harvey.  Medina proceeded to read the portions of the PIP to Ms. Harvey in a racially demeaning manner. At the end of presenting the PIP, Medina wrote on the PIP that Ms. Harvey and Medina mutually agreed to this PIP which was false.  Ms. Harvey never received a copy of the PIP during the meeting.  Medina provided the PIP to Ms. Harvey as she exited the office, and Medina instructed Ms. Harvey to send the PIP to her Human Resources Business Partner.  Ms. Harvey submitted the PIP to the Human Resources Business Partner, the Executive Director of Community Services.

20. Preparing and publishing the PIP was a pretext to provide cover for Medina's discrimination against Ms. Harvey.

21. Another example of discrimination occurred during 1-1 meetings between Ms. Harvey and Medina.  Medina would often ask what Ms. Harvey's plans were over the next 2-3 years.

Ms. Harvey's response would be that she planned on working at BWH. This line of questioning became more frequent during 2019-2020.

22. For example, Medina invited the Ambulatory Nursing Directors to a local restaurant to celebrate her title change to Executive Director.  Meanwhile, Medina mentioned to Ms. Harvey publicly that a job opportunity was available at another institution.

23. Medina mentioned to Ms. Harvey, in the presence of several colleagues, that there was an opening at BMC for a particular position.  Medina was publicly encouraging Ms. Harvey to leave BWH and undermining her to her colleagues.

24. Another example of Medina's discrimination was in her recommendation of disparate pay for Ms. Harvey compared to non-black employees.

25. Ms. Harvey became aware that other black employees suffered discriminatory treatment from Medina as well.

26. Medina created and reinforced the implementation of race stereotypes at work despite the qualifications of Ms. Harvey and despite the fact that she was performing her job at an exemplary level for over a decade without recognition.

27. Medina continually devalued Ms. Harvey, her opinions, and her role within the program in a racially charged manner.  Again, this purposefully prevented Ms. Harvey from fulfilling her role at BWH.

28. Medina purposefully and wrongfully prevented Ms. Harvey from earning equitable pay and title designations throughout her tenure at BWH.

29. For instance, Ms. Harvey was due for her annual merit (October 2020) raise and evaluation, but she received a PIP from Medina instead.  Due to this action, Ms. Harvey was prevented from receiving equitable pay or advancement within any Partners' hospital affiliates.

30. The discrimination became so pervasive and intolerable for Ms. Harvey that her mental health deteriorated and she as forced to take medical leave of absence on July 2, 2020.

31. Medina made it clear before Ms. Harvey's leave (by regularly contacting Ms. Harvey before her leave) that the discrimination would persist upon her return from leave.

32. During Ms. Harvey's last few days prior to leave, Medina bombarded Ms. Harvey with telephone calls and emails requesting information which exacerbated her already intense emotional distress.

33. All of the foregoing increased Ms. Harvey's stress and further caused emotional distress and a deterioration of her mental health during her medical leave.

34. The egregious conduct of Medina continued a pattern of discrimination and a purposeful intent to drive Ms. Harvey from her position.

35. The conduct evidenced an active effort to constructively discharge Ms. Harvey by making the continued performance of her duties intolerable and impossible.

36. An objective assessment of the conditions under which Ms. Harvey was expected to work upon her return from leave clearly reflect that the conditions were purposefully made so difficult as to be considered legally and factually intolerable.

37. For the benefit of her health and well-being, Ms. Harvey advised BWH that she was unable to tolerate the continued work environment and discrimination.

38. BWH, through Medina, refused to rectify the situation in a purposeful effort to force Ms. Harvey's resignation.

39. On October 1, 2020, Ms. Harvey was forced to resign due to the conduct of Medina and her refusal to address the discrimination she directed at Ms. Harvey.

40. Under the circumstances set forth herein, BWH constructively discharged Ms. Harvey and her

    termination was a direct result of the discrimination set forth herein.


IV.     **Causes of Action**

**COUNT I**
(Violation of Title VII of the Civil Rights Act of 1964 v. BWH)

41. Ms. Harvey repeats and realleges each of the foregoing allegations and incorporates them

    herein by reference.

42. On February 11, 2021, Ms. Harvey timely presented her claims of discrimination to the

    Massachusetts Commission Against Discrimination which correspondingly filed the claim

    with the Equal Employment Opportunity Commission ("EEOC").

43. The EEOC assigned Charge No. 16C-2021-01627 to the claim.

44.  Thereafter, Ms. Harvey engaged in the administrative process through the MCAD and

    EEOC.

45. The EEOC issued a Right to Sue Letter to Ms. Harvey on March 13, 2024, informing Ms.

    Harvey that she was required to file this lawsuit within 90 days, which she has done. *See*

    Exhibit 1.

46. Ms. Harvey has properly exhausted her administrative requirements at the EEOC and the

    matter, therefore, is now properly before this Court.

47. Title VII of the Civil Rights Act of 1964 (42 U.S.C., 2000e *et seq*.) ("Title VII") makes it

    unlawful for an employer "to discriminate against any individual with respect to [her]

    compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e–2(a)(1),

    or "to limit, segregate, or classify [her] employees ... in any way which would deprive or tend

to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee," 42 U.S.C. § 2000e–2(a)(2), based on a protected characteristic such as race.

48. Title VII prohibits the types of willful discriminatory employment practices in which BWH here engaged, including harassment in the form of creating and maintaining a hostile and abusive work environment, failing to fairly and equitably compensate and promote Ms. Harvey, engaging in discriminatory retaliation against Ms. Harvey, and constructively discharging Ms. Harvey.

49. The conduct that BWH engaged in, and to which it subjected Ms. Harvey, was continuous and was so severe and pervasive that it altered the conditions of Ms. Harvey's employment and created an abusive work environment.

50. The environment created by BWH was both objectively and subjectively offensive.

51. The environment created by BWH was one that a reasonable person would find hostile or abusive.

52.  The environment created by BWH was one that Ms. Harvey in fact did perceive to be hostile and abusive.

53. As set forth above, the frequency of the discriminatory conduct was continuous and the severity of the conduct was objectively hostile, abusive and humiliating.

54. BWH's discriminatory conduct unreasonably interfered with Ms. Harvey's work performance.

55. The harassment to which Ms. Harvey was subjected was of a kind and to a degree that any reasonable person would have felt that it affected the conditions of her employment.

56. Ms. Harvey suffered an accumulated effect from the repeated verbal attacks, consistent intimidation, and open hostile work environment to which she was subjected.  BWH's persistent conduct amounted to racial discrimination.

57. It is clear from the consistency of the harassing conduct that Ms. Harvey endured that its purpose was to create a hostile work environment.

58. The conduct set forth herein undermined Ms. Harvey's ability to succeed at her job and was designed to lead to her constructive discharge and it did lead to her constructive discharge.

59. Title VII also contains an anti-retaliation provision that BWH violated.   Under the statute, it is unlawful "for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a).

60. BWH engaged in such retaliation after Ms. Harvey complained of discrimination and after she filed a complaint at the MCAD and EEOC.

61. As a proximate result of the BWH's willful, discriminatory conduct in violation of Title VII, Ms. Harvey suffered harm.

62. Ms. Harvey is entitled to recover all remedies set forth in Title VII, including but not limited to compensatory damages, front and back pay, punitive damages, emotional distress damages, interest, and attorney's fees

### DEMAND FOR JURY

Ms. Harvey demands a trial by jury on all counts of this Complaint that are so triable.

**WHEREFORE**, Ms. Harvey requests that this Honorable Court:

(1)  Enter Judgment in her favor on all counts of this Complaint and award all damages, costs, interest and attorney's fees recoverable at law and in equity on each count;

(2)  Enter a Judgment against BWH on all counts of this Complaint, find that the Defendants

knowingly and willfully discriminated against Ms. Harvey, and award Ms. Harvey all

damages, costs, interest and attorney's fees that are recoverable at law and in equity;

(3)  Award all damages, including but not limited to, compensatory damages, front pay, back

pay, wages, emotional distress, punitive damages, costs and attorney's fees to which Ms.

Harvey is entitled at law and in equity;

(4)  Order reinstatement of Ms. Harvey to her position at BWH; and

(5)  Award such other and further relief as this Court finds just and equitable.

PLAINTIFF REGINA HARVEY,

By her attorney,

/s/ *Timothy J. Perry*

Timothy J. Perry (BBO# 631397)
*tperry@pkcounsel.com*
**PERRY KRUMSIEK LLP**
One Boston Place, Suite 2600
Boston, MA  02108
(617) 720-4300
Date: March 15, 2024                 fax (617) 720-4310

10